# United States Court of Appeals

*for the*

# Fifth Circuit

Case No. 26-10020

TIMOTHY ROGERS,

*Plaintiff-Appellant,*

v.

LHOIST NORTH AMERICA OF TEXAS, L.L.C.,

*Defendant-Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, FORT WORTH, IN CASE NO. 4:24-CV-1223, REED CHARLES O'CONNOR, CHIEF JUDGE

## BRIEF FOR PLAINTIFF-APPELLANT

BRIAN P. SANFORD
EMMA HOFFMAN
ELIZABETH J. SANFORD
SANFORD FIRM
*Attorneys for Plaintiff-Appellant*
2711 Hibernia Street
Dallas, Texas 75204
(214) 717-6653
bsanford@sanfordfirm.com
ehoffman@sanfordfirm.com
esanford@sanfordfirm.com

CP COUNSEL PRESS (800) 4-APPEAL • (815283)

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

| **Appellees:** | **Counsel for Appellees:** |
|---|---|
| Lhoist North America of Texas, L.L.C. | Talley Parker of Jackson Lewis, P.C. Dallas, TX |

| **Appellants:** | **Counsel for Appellants:** |
|---|---|
| Timothy Rogers | Brian Sanford of Sanford Firm Dallas, TX |
| Timothy Rogers | Elizabeth Sanford of Sanford Firm Dallas, TX |
| Timothy Rogers | Emma Hoffman of Sanford Firm Dallas, TX |

*S/Brian Sanford*
Brian Sanford

## STATEMENT REGARDING ORAL ARGUMENT

This case presents important questions regarding the proper analytical framework for retaliation claims under the Surface Transportation Assistance Act, 49 U.S.C. § 31105, particularly the application of the contributing-factor and clear-and-convincing-evidence standards at summary judgment. This case also involves the District Court's resolution of disputed material facts and credibility determinations at summary judgment on retaliation claims under 42 U.S.C. § 1981 and the Fair Labor Standards Act. Oral argument would assist the Court in resolving these issues.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ........ i
STATEMENT REGARDING ORAL ARGUMENT ........ ii
TABLE OF CONTENTS ........ iii
TABLE OF AUTHORITIES ........ v
STATEMENT OF JURISDICTION ........ 1
STATEMENT OF THE ISSUES ........ 1
Issue One ........ 1
Issue Two ........ 1
STATEMENT OF THE CASE ........ 2
A. Factual Background ........ 2
B. Procedural History ........ 5
SUMMARY OF THE ARGUMENT ........ 6
STANDARD OF REVIEW ........ 8
ARGUMENT ........ 9
I. The District Court Failed to Apply the STAA's Distinct Statutory Framework ........ 9
A. The Contributing-Factor Standard Is Lower Than *McDonnell Douglas* ........ 9
B. The Employer Bears the Burden of Clear and Convincing Evidence. ........ 11
C. Lhoist Cannot Satisfy Its Burden. ........ 13
a. Lhoist's decision was contrary to its own internal policies. ........ 14
b. Lhoist has no history of firing employees for the alleged conduct absent protected activity. ........ 15

c. Lhoist management identified Mr. Rogers by his protected activity when deciding to terminate him. .......... 16

d. Lhoist decided to suspend Mr. Rogers only after he escalated his complaints. .......... 17

II. Mr. Rogers Raised Genuine Disputes of Material Fact Sufficient to Survive Summary Judgment on All Claims. .......... 18

A. The District Court Improperly Resolved Disputed Facts and Made Credibility Determinations. .......... 20

B. Lhoist's Failure to Follow Its Own Progressive Discipline Policy Is Evidence of Pretext. .......... 23

C. The District Court Erred in Dismissing Mr. Rogers's Disparate Treatment Evidence. .......... 25

D. The District Court Erred in Dismissing Mr. Rogers's Cat's Paw Theory. .......... 26

E. The Suspicious Nature of Lhoist's Investigation Supports an Inference of Pretext. .......... 31

F. The Suspicious Timing and Circumstances of Mr. Rogers's Suspension and Termination Support an Inference of Pretext .......... 33

CONCLUSION AND PRAYER .......... 34

CERTIFICATE OF SERVICE .......... 36

CERTIFICATE OF COMPLIANCE .......... 37

# TABLE OF AUTHORITIES

Page(s)

**Cases:**

*Allen v. Admin. Rev. Bd.*,
514 F.3d 468 (5th Cir. 2008) ........ 11

*Ames v. Ohio Dep't of Youth Services*,
605 U.S. 303 (2025) ........ 19, 22, 30

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986) ........ 9, 23

*Bostock v. Clayton Cnty., Georgia*,
590 U.S. 644 (2020) ........ 19

*Brown v. Wal-Mart Stores E., L.P.*,
969 F.3d 571 (5th Cir. 2020) ........ 19, 25, 27

*Burton v. Freescale Semiconductor, Inc.*,
798 F.3d 222 (5th Cir. 2015) ........ 16, 28, 33, 34

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ........ 9

*Clark v. Champion Nat'l Sec., Inc.*,
952 F.3d 570 (5th Cir. 2020) ........ 21

*Coleman v. District of Columbia*,
794 F.3d 49 (D.C. Cir. 2015) ........ 12

*Epple v. BNSF Ry. Co.*,
No. 3:16-CV-1505-C, 2018 WL 10374615
(N.D. Tex. Feb. 9, 2018), *aff'd*,
785 F. App'x 219 (5th Cir. 2019) ........ 14

*Evans v. City of Houston*,
246 F.3d 344 (5th Cir. 2001) ........ 33

*Galaviz v. Reyes*,
84 F.4th 389 (5th Cir. 2023) ........ 12, 14

*Garcia v. Prof'l Contract Servs., Inc.*,
938 F.3d 236 (5th Cir. 2019) ........ 34

*Gee v. Principi*,
289 F.3d 342 (5th Cir. 2002) ........ 21

*Goudeau v. Nat'l Oilwell Varco, L.P.*,
793 F.3d 470 (5th Cir. 2015) ........ 23, 24

*Guzman v. Allstate Assurance Co.*,
18 F.4th 157 (5th Cir. 2021) ........ 8

*Hagan v. Echostar Satellite, L.L.C.*,
529 F.3d 617 (5th Cir. 2008) ........ 19

*Harmon v. Collier*,
158 F.4th 595 (5th Cir. 2025) ........ 27

*Hittle v. City of Stockton*,
145 S. Ct. 759 (2025) ........ 19, 20

*Jackson v. Cal-W. Packaging Corp.*,
602 F.3d 374 (5th Cir. 2010) ........ 22

*Jan. v. City of Huntsville*,
74 F.4th 646 (5th Cir. 2023) ........ 33

*Laxton v. Gap Inc.*,
333 F.3d 572 (5th Cir. 2003) ........ 23, 33

*Lee v. Kansas City S. Ry. Co.*,
574 F.3d 253 (5th Cir. 2009) ........ 26

*Machinchick v. PB Power, Inc.*,
398 F.3d 345 (5th Cir. 2005) ........ 23, 24

*Marano v. Department of Justice*,
2 F.3d 1137 (Fed. Cir. 1993) ........ 10

*Muldrow v. City of St. Louis, Missouri,*
601 U.S. 346 (2024) ........ 22

*Murray v. UBS Securities, LLC*,
601 U.S. 23 (2024) ........ 10

*Owens v. Circassia Pharms., Inc.*,
33 F.4th 814 (5th Cir. 2022) ........ 21, 31, 32

*Patterson v. Georgia Pac., LLC*,
38 F.4th 1336 (11th Cir. 2022) ........ 29

*Pisharodi v. Valley Baptist Med. Ctr.*,
393 F. Supp. 2d 561 (S.D. Tex. 2005) ........ 30

*Reeves v. Sanderson Plumbing Prods., Inc.*,
530 U.S. 133 (2000) ........ 9, 12, 21, 31

*Sealed Appellee v. Sealed Appellant*,
620 F. App'x 230 (5th Cir. 2015) ........ 13

*Trujillo v. PacifiCorp*,
524 F.3d 1149 (10th Cir. 2008) ........ 32

*United States v. Ramos-Delgado*,
763 F.3d 398 (5th Cir. 2014) ........ 19

*Watkins v. Tregre*,
997 F.3d 275 (5th Cir. 2021) ........ 25

*Yowell v. Admin. Rev. Bd., United States Dep't of Lab.*,
993 F.3d 418 (5th Cir. 2021) ........ 11

*Zamora v. City of Houston*,
798 F.3d 326 (5th Cir. 2015) ........ 27, 29

*Ziparo v. CSX Transportation, Inc.*,
160 F.4th 314 (2d Cir. 2025) ........ 11-12, 18

**Statutes & Other Authorities:**

28 U.S.C. § 1291 ........ 1

28 U.S.C. 1331 ........ 1

29 U.S.C. § 215 ........ 1, 5

42 U.S.C. § 1981 ........ 1, 5, 7, 11, 30

42 U.S.C. § 1981(a) ........ 31

49 U.S.C. § 31105 ........ 1, 5

49 U.S.C. § 31105(a)(1) ........ 10

49 U.S.C. § 31105(d) ........ 10

49 U.S.C. § 42121 .................... 14
49 U.S.C. § 42121(b).................... 6, 10
49 U.S.C. § 42121(b)(2)(B)(i) .................... 10
49 U.S.C. § 42121(b)(2)(B)(ii) .................... 11, 12
Fed. R. Civ. P. 56 ....................20
Fed. R. Civ. P. 56(a) .................... 9
Fed. R. Evid. 401....................20

## STATEMENT OF JURISDICTION

The U.S. District Court for the Northern District of Texas had subject-matter jurisdiction because Appellant's claims arise under 42 U.S.C. § 1981, 49 U.S.C. § 31105, and 29 U.S.C. § 215, presenting federal questions. *See* 28 U.S.C. § 1331. This Court has jurisdiction under 28 U.S.C. § 1291 over the appeal from a final judgment. The District Court entered its Order Granting Summary Judgment (RE.3; ROA.982-94) and Final Judgment (RE.4; ROA.995) on December 16, 2025. Appellant filed a timely Notice of Appeal on January 7, 2026. ROA.1023-24.

## STATEMENT OF THE ISSUES

### Issue One

The first question in this case is whether the STAA's distinct statutory burden-shifting framework, which requires the employer to demonstrate by *clear and convincing evidence* that it would have taken the same action absent the employee's protected activity, should have been applied, rendering the *McDonnell Douglas* framework inapplicable as applied by the District Court.

### Issue Two

The second question in this case is whether genuine issues of material fact of pretext exist for retaliation claims where the employer relies on allegations contrary

to witness statements and its own contemporary accounts, as well as not following its internal disciplinary policies and making suspicious decisions in its investigation.

## STATEMENT OF THE CASE

### A. Factual Background

Timothy Rogers[1] began working for Lhoist North America of Texas, LLC ("Lhoist") as a truck driver delivering lime slurry in September 2020. ROA.589. Throughout his employment, Mr. Rogers consistently filed complaints about safety violations, race discrimination, and pay practice issues. ROA.589-90. During his tenure, he received positive performance reviews, including being consistently rated as a "solid contributor." ROA.612:19-614:13.

Lhoist began retaliating against Mr. Rogers after Bryon Hamm became Mr. Rogers's direct supervisor in June 2023. ROA.589-590, ROA.595. In October 2023, when Mr. Rogers escalated his engagement in protected activity, Lhoist escalated its retaliation.

On October 4, 2023, Mr. Rogers reported to Mr. Hamm that a fellow driver, Kirk Simms, had been driving a truck with three missing lug nuts and a fourth loose—a serious safety hazard. ROA.619:17-620:8. Two days later, on October 6, Mr.

[1] The Order and Judgment spell Plaintiff's name as Rodgers. ROA.982-995. The correct spelling is Rogers.

Simms confronted Mr. Rogers in the break room over the report, calling him a "snitch." ROA.624:3-626:3. Mr. Rogers admits he called Mr. Simms a "bitch" in response. ROA.626:4-5. Mr. Simms could not have learned of these allegations from anybody except through Mr. Hamm, as Mr. Rogers reported his concerns to Mr. Hamm alone in his private office. ROA.620:5-12.

On October 11, 2023, Mr. Rogers attended a meeting as a witness for a co-worker, Tim Gooden, who was meeting with Mr. Hamm and Cody Thomas, another supervisor, to report race discrimination and retaliation. ROA.592, ROA.742.

On October 17, 2023, while delivering a load, Mr. Rogers experienced a tire blowout that damaged the fender of his trailer and reported the issue to Mr. Hamm. ROA.592, ROA.751. Mr. Hamm repeatedly instructed Mr. Rogers to continue driving the damaged vehicle to Waco, despite the danger. ROA.592, ROA.754-55. Mr. Rogers refused because of the safety risk, and Mr. Hamm eventually relented. ROA.592, ROA.754-55. Lhoist admits that Mr. Hamm's instruction was a safety concern and that Mr. Rogers was right to decline. ROA.650:6-652:17.

The next week, the events leading to Mr. Rogers's termination unfolded over the span of six days:

**October 24, 8:40 a.m.** — Mr. Hamm issues Mr. Rogers a Final Written Warning for the October 6 altercation with Mr. Simms. ROA.725, ROA.759. Cody

Thomas is present as a witness; Ruby Sonnenberg and Darin Wilson, both from Human Resources, join by phone. ROA.759. Mr. Rogers was on the phone with Mr. Gooden, who remained on the call as a witness. ROA.759. This Final Written Warning skipped multiple steps in Lhoist's own progressive corrective action policy. RE.9; ROA.859.

**October 24, 11:09 a.m.** — Mr. Thomas emails Quade Nye, a higher up manager, and Ms. Sonnenberg his description of the morning's meeting, *without any mention of Mr. Rogers using profanity, yelling, or being disruptive*. RE.6; ROA.833.

**October 24, 11:12 a.m.** — Mr. Hamm emails Mr. Nye his description of the meeting, also *without any mention of Mr. Rogers using profanity, yelling, or being disruptive*. RE.7; ROA.835.

**October 24, 1:39 p.m.** — Mr. Rogers emails Marcos Franca, the CEO of Lhoist Global Headquarters, and Laurent Yvon, the Chief Human Resources Officer of Lhoist Global Headquarters, about his various concerns, including safety, pay, and discrimination concerns. *This was Mr. Rogers's first time reaching out directly to Lhoist Global Headquarters about his complaints.* RE.8; ROA.837.

**October 25, 3:38 p.m.** — Lhoist suspends Mr. Rogers for "disruptive behavior" for allegedly yelling and using inappropriate language immediately after the disciplinary meeting on October 24. ROA.840.

**October 25, 4:56 p.m.** — The first written report describing Mr. Rogers's alleged disruptive behavior is sent—*after Lhoist had already suspended Mr. Rogers*. ROA.886.

**October 27, 9:15 a.m.** — A member of Lhoist management texts Philipp Neimann, the CEO of Lhoist North America, stating that they are planning to terminate Mr. Rogers, describing Mr. Rogers as "[t]he gentleman who sent the email to Laurent and Marcos"—a reference to Mr. Rogers's protected activity of escalating complaints to Lhoist's Global Headquarters. RE.10; ROA.879.

**October 30** — Lhoist terminates Mr. Rogers's employment. ROA.594, 881-82.

Mr. Rogers, Mr. Gooden, and Kenton Waites (an employee who was in the hallway and interacted with Mr. Rogers at the time of his alleged outburst) all deny that Mr. Rogers engaged in any disruptive or profane behavior after the October 24 meeting. RE.11; ROA.598, ROA.632:2-25, ROA.644:20-24, ROA.683:22-684:5.

**B. Procedural History**

Mr. Rogers filed suit alleging retaliation in violation of the Surface Transportation Assistance Act, 49 U.S.C. § 31105 ("STAA"), the Civil Rights Act of 1866, 42 U.S.C. § 1981, and the Fair Labor Standards Act, 29 U.S.C. § 215 ("FLSA"). ROA.7-19.

Lhoist moved for summary judgment on October 13, 2025. ROA.152-54. Mr. Rogers filed his response on November 4, 2025 (ROA.552-87), and Lhoist filed its reply on November 17, 2025. ROA.927-46.

On December 16, 2025, the District Court granted summary judgment on all counts. RE.3; ROA.982-94. The District Court found that Mr. Rogers satisfied the prima facie case for each of his claims but concluded there was no genuine issue of material fact as to pretext. *Id.* Critically, the District Court analyzed all three retaliation claims as one under the *McDonnell Douglas* framework, despite acknowledging that the STAA imposes a lower bar on the plaintiff. RE.3; ROA.986. The District Court did not require Lhoist to meet its statutory burden of proving by clear and convincing evidence that it would have taken the same action absent Mr. Rogers's protected activity.

Mr. Rogers timely appealed. RE.2; ROA.1023-34.

## SUMMARY OF THE ARGUMENT

The District Court committed two fundamental errors in granting summary judgment.

**First**, the District Court failed to apply the correct legal framework to Mr. Rogers's STAA claim. The STAA incorporates the burden-shifting framework of 49 U.S.C. § 42121(b), which is distinct from *McDonnell Douglas* and deliberately more

protective of employees. Under this framework, once a plaintiff shows that protected activity was a "contributing factor" in the adverse action—a standard the District Court found Mr. Rogers satisfied—the burden shifts to the employer to prove by "clear and convincing evidence" that it would have taken the same action regardless. The District Court acknowledged this different standard in passing but never applied it. Instead, the District Court skipped directly to a pretext analysis, collapsing the STAA's statutory framework into the same *McDonnell Douglas* analysis it applied to Mr. Rogers's Section 1981 and FLSA claims. This was legal error. Lhoist offered no clear and convincing evidence that it would have fired Mr. Rogers absent his protected activity, because the record demonstrates the opposite: Lhoist's termination decision was contrary to its own progressive discipline policy, Lhoist produced no evidence that it had ever terminated another employee for similar reasons, and Lhoist admitted profanity was common at the truckyard. Further, Lhoist decided to suspend and terminate Mr. Rogers only after he sent complaints to Lhoist's Global Headquarters for the first time, investigated only after the decision to suspend had already been made, and identified Mr. Rogers by reference to his protected activity—his email to Global Headquarters—when discussing his termination.

**Second**, even under the *McDonnell Douglas* framework applicable to Mr. Rogers's Section 1981 and FLSA claims, the District Court improperly resolved disputed facts and made credibility determinations that are the exclusive province of the jury. The District Court adopted Lhoist's version of disputed events wholesale, crediting the testimony of Lhoist's managers over the contradictory testimony of Mr. Rogers, Mr. Gooden, and Mr. Waites regarding whether Mr. Rogers engaged in disruptive conduct on October 24, 2023. The court relied on a "good faith belief" rationale to sidestep this dispute, but the falsity of an employer's proffered reason is itself evidence of pretext. The court also dismissed evidence of Lhoist's failure to follow its own progressive discipline policy, its disparate treatment of Mr. Rogers compared to other employees, the suspicious investigation, and the cat's paw theory of liability—each of which independently raises genuine issues of material fact. Viewed together and in the light most favorable to Mr. Rogers, a reasonable jury could conclude that Lhoist's stated reasons for terminating Mr. Rogers were pretext for retaliation.

## STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment *de novo*, applying the same standard as the district court. *Guzman v. Allstate Assurance Co.*, 18 F.4th 157, 160 (5th Cir. 2021). Summary judgment is appropriate only where "there

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In considering a motion for summary judgment, this Court must draw all reasonable inferences in favor of the nonmoving party, refrain from making credibility determinations or weighing the evidence, disregard all evidence favorable to the moving party that the jury is not required to believe, and give credence to the evidence favoring the nonmovant. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The movant is entitled to summary judgment only if no rational jury could find for the nonmoving party when considering the entire record. *See id.* at 250.

## ARGUMENT

### I. The District Court Failed to Apply the STAA's Distinct Statutory Framework.

#### A. The Contributing-Factor Standard Is Lower Than *McDonnell Douglas*.

The STAA protects employees who, among other things, file complaints "related to a violation of a commercial motor vehicle safety or security regulation" or refuse to operate a vehicle due to a reasonable apprehension of serious injury. 49

U.S.C. § 31105(a)(1). Complaints brought under the STAA "shall be governed by the legal burdens of proof set forth in section 42121(b)." 49 U.S.C. § 31105(d).

Section 42121(b), the burden-shifting framework originally formulated for aviation safety whistleblower claims and later incorporated into most whistleblower statutes, requires a complainant to show that protected activity "was a contributing factor in the unfavorable personnel action alleged in the complaint." 49 U.S.C. § 42121(b)(2)(B)(i). The statute lays out a distinct burden-shifting framework to make this determination. *Id.* at (ii). Congress made this contributing-factor standard intentionally less "protective of employers" than *McDonnell Douglas* as the whistleblower statutes relate to the "health, safety, or well-being of the public." *Murray v. UBS Securities, LLC*, 601 U.S. 23, 39 (2024).

The Supreme Court has squarely recognized this distinction. In *Murray v. UBS Securities, LLC*, the Court held that the contributing-factor framework does not require proof of retaliatory intent, animus, or motive—a marked departure from the requirements of traditional employment discrimination frameworks. *Id.* at 34–35. The Court explained that the contributing-factor standard is "broad indeed." *Id.* at 37. "Personnel actions against employees should quite simply not be based on protected whistleblowing activities—not even a little bit." *Id.* at 36-37 (quoting *Marano v. Department of Justice*, 2 F.3d 1137, 1141 (Fed. Cir. 1993)) (cleaned up).

This Court has likewise recognized that the contributing-factor framework is distinct from *McDonnell Douglas* and intentionally less protective of employers, as it is utilized in whistleblower statutes intended to protect the public at large. *See, e.g., Allen v. Admin. Rev. Bd.*, 514 F.3d 468, 476 (5th Cir. 2008); *Yowell v. Admin. Rev. Bd., United States Dep't of Lab.*, 993 F.3d 418, 422 n.1 (5th Cir. 2021).

The District Court committed reversible error by analyzing Mr. Rogers's STAA claim under the same *McDonnell Douglas* framework it applied to his Section 1981 and FLSA claims. The court's order states: "All three of his retaliation claims—the STAA, the 42 U.S.C. § 1981, and the FLSA—are analyzed under the *McDonnell Douglas* burden-shifting framework." RE.3; ROA.986. While the court acknowledged in passing that "the bar is lower for a STAA claim," it never applied the lower standard in its analysis. *Id.* Instead, it analyzed all three claims together as one, to Mr. Rogers's significant prejudice.

**B. The Employer Bears the Burden of Clear and Convincing Evidence.**

Once a plaintiff satisfies the contributing-factor standard, the burden shifts to the employer to "demonstrate[ ] by clear and convincing evidence, that the employer would have taken the same unfavorable personnel action in the absence of that behavior." 49 U.S.C. § 42121(b)(2)(B)(ii). Unlike with *McDonnell Douglas*, the ultimate burden is on the employer. *Ziparo v. CSX Transportation, Inc.*, 160 F.4th 314,

331 (2d Cir. 2025); *see also Coleman v. District of Columbia*, 794 F.3d 49, 54 (D.C. Cir. 2015) ("Coleman's establishment of a prima facie case permanently shifted to the Department the burden of persuasion—by clear and convincing evidence, no less—that the challenged decision was not retaliatory.").

The clear-and-convincing standard is a far greater burden than the mere "legitimate, nondiscriminatory reason" required of employers under *McDonnell Douglas*. The *McDonnell Douglas* burden is one "of production, not persuasion." *Reeves*, 530 U.S. at 142. By contrast, clear and convincing evidence requires the employer to affirmatively demonstrate, with a high degree of probability, that it would have fired the employee regardless of his protected activity. *Galaviz v. Reyes*, 84 F.4th 389, 395 (5th Cir. 2023). "If there are equally plausible explanations for the outcome, a party did not sustain its burden of proving clear and convincing evidence." *Id.*

The District Court's analysis skips entirely from the prima facie case to pretext with no acknowledgment of the clear-and-convincing standard placed on Lhoist. The court's order does not once mention "clear and convincing evidence" in its analysis. ROA.982-94. The court references the contributing-factor standard only to note the lower bar for the plaintiff, then immediately pivots to the pretext analysis as though Lhoist had no intermediate burden to satisfy. RE.3; ROA.986. Instead, the court applied a mere burden of production. *Id.* When a lower court applies the incorrect

burden of proof, the case is subject to harmless error review. *Sealed Appellee v. Sealed Appellant*, 620 F. App'x 230, 233 (5th Cir. 2015). As explained below, this incorrect analysis harmed Mr. Rogers, as Lhoist could not, and did not attempt to, meet the clear-and-convincing standard.

**C. Lhoist Cannot Satisfy Its Burden.**

Even if the District Court had applied the correct standard, the record demonstrates that Lhoist cannot meet the clear-and-convincing standard. Mr. Rogers wholly denies the alleged outburst leading to his termination, and multiple witnesses testify that the outburst did not occur. Taking these facts in the light most favorable to the nonmovant, this disputed fact should be sufficient to make a grant of summary judgment improper. However, even if Lhoist's allegations are taken as true, the circumstantial evidence surrounding Lhoist's disciplinary decisions still prevents Lhoist from meeting the clear-and-convincing standard. When Lhoist gave Mr. Rogers a Final Written Warning and then fired him, it ignored its own internal disciplinary policies, terminated Mr. Rogers for behavior common at the truckyard, had no written policies that justified its decision, and did not suspend and terminate him until after he reached out to the Global Headquarters. Lhoist's evidence, even at its best, is no more probable than the inference of retaliation, and where there are

equally plausible explanations, the employer has not sustained its burden. *Galaviz*, 84 F.4th at 395.

**a. Lhoist's decision was contrary to its own internal policies.**

Whether an employer followed its own disciplinary procedures is a relevant factor in determining whether a defendant made a clear and convincing showing it would have taken the same adverse action absent the protected activity. *Epple v. BNSF Ry. Co.*, No. 3:16-CV-1505-C, 2018 WL 10374615, at *4 (N.D. Tex. Feb. 9, 2018), *aff'd*, 785 F. App'x 219 (5th Cir. 2019) (analyzing the Federal Rail Safety Act, which also incorporates the 49 U.S.C. § 42121 burden-shifting framework utilized in the STAA). Lhoist's Employee Handbook states that it "supports the use of progressive corrective action to address issues such as poor work performance or misconduct." RE.9; ROA.859. The policy provides for verbal reminders, then written reminders, then suspension, before a Final Written Warning. *Id.* Mr. Rogers had never received any corrective action before October 24, 2023. Yet Lhoist issued him a Final Written Warning—skipping every intermediate step of its own policy. *Id.* Lhoist then suspended and terminated Mr. Rogers within a week of the Final Written Warning. ROA.725, ROA.840, ROA.880-81. This rapid-fire escalation in discipline, which coincided with Mr. Rogers's own escalation in his protected activity, is contrary to Lhoist's internal policies. Lhoist cannot offer clear and convincing

evidence that its decisions were unrelated to Mr. Rogers's protected activity when it is directly contrary to its own stated procedures.

**b. Lhoist has no history of firing employees for the alleged conduct absent protected activity.**

Lhoist has offered no evidence that it has ever fired an employee for alleged profanity or "disruptive behavior" who had not previously engaged in protected activity. In fact, profanity was common at the Hurst terminal and used by managers themselves, including Mr. Thomas, Mr. Nye, Mr. Rimberg, and Ms. Sonnenberg, all who were involved in the decision to suspend and terminate Mr. Rogers for his alleged profanity. ROA.653:15-16, ROA.663:14-20, ROA.677:6-19, ROA.694:4-5. As one member of upper management stated, "truck drivers have some very colorful words that they use sometimes." ROA.654:9-10. Rarely, if ever, were people disciplined for cursing or loud vocal behavior, absent threats of violence. ROA.654:3-12, ROA.593.

The District Court differentiates Mr. Rogers's (alleged) outburst from other instances of cursing at the truckyard by claiming his curses were directed at others. ROA.990. However, Lhoist does not allege that he cursed directly at anyone on October 24, 2023, during the alleged outburst Lhoist used to justify his termination; Lhoist alleges only that he cursed at Mr. Simms on October 6, and shouted curses about HR on October 24. Mr. Rogers denied saying anything derogatory about any

individuals or Lhoist itself at that time. ROA.633:10-20. Further, Lhoist offers no evidence of any written policies or examples of other terminated employees to show that this is a meaningful distinction it has ever made. In fact, Lhoist's corporate representative admitted he had never seen anyone fired for cursing. ROA.654:3-12.

Lhoist offers Terrance Williams as a comparator to show it is common practice to give Final Written Warnings for profane outbursts, but Mr. Williams had threatened violence when Lhoist gave him a Final Written Warning. ROA.850. Even if Mr. Rogers engaged in the disruptive behavior Lhoist alleges on October 24, 2023 (which he denies and other witnesses dispute), Lhoist does not allege Mr. Rogers used any violent or threatening language at any point. At best, this attempted distinction is a factual dispute which the District Court improperly resolved in favor of the defendant. *See Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 236 (5th Cir. 2015).

**c. Lhoist management identified Mr. Rogers by his protected activity when deciding to terminate him.**

When a member of Lhoist management texted the CEO of Lhoist North America about the plan to terminate Mr. Rogers, the text described him as "[t]he gentleman who sent the email to Laurent and Marcos"—a direct reference to his email to Global Headquarters complaining about discrimination, safety concerns, and retaliation. RE.10; ROA.879. This is probative evidence that Mr. Rogers's

protected activity was at least a contributing factor in his termination. Under the STAA's framework, this alone should bar a finding that Lhoist met the clear-and-convincing standard, at least at the summary judgment stage.

**d. Lhoist decided to suspend Mr. Rogers only after he escalated his complaints.**

Mr. Rogers was not suspended until the day after he emailed Lhoist's Global CEO and Chief Human Resources Officer about his safety and other concerns. The chronology is telling: the two employees present at the October 24 meeting emailed contemporaneous accounts that morning without any mention of disruptive behavior, despite Mr. Rogers's behavior allegedly being egregious enough to warrant termination. RE.6, 7; ROA.833, ROA.835. Later that afternoon, Mr. Rogers emailed his complaints to Global Headquarters, and Lhoist suspended him two hours later. RE.8; ROA.837, ROA.840. The first written report of his alleged outburst was only generated *after* the suspension had already occurred. ROA.886. The District Court attempted to undermine the probative value of these events by stating that Mr. Rogers "had twice before contacted the company's CEO about safety practices in previous years without retaliation." ROA.993. However, this was in reference to Mr. Rogers contacting the North American CEO, not the CEO of the Global Headquarters; Mr. Rogers stated in his email to the Global Headquarters was an escalation because his internal complaints at Lhoist North America were not helping.

*Id.*; RE.8; ROA.837. This distinction is meaningful, as evidenced by the text to the North American CEO discussed above, describing Mr. Rogers "[t]he gentleman who sent the email to Laurent and Marcos." RE.10; ROA.879. Additionally, Lhoist not retaliating against one act of protected activity does not mean that did not retaliate for later protected activity, and such a conclusion is a credibility determination better suited for the jury.

Because Lhoist has failed to demonstrate by clear and convincing evidence that it would have fired Mr. Rogers absent his protected activity, summary judgment on the STAA claim was improper. Under the statutory framework, if the employer fails to meet its clear-and-convincing burden, the inquiry ends and the plaintiff prevails. There should have been no pretext analysis at all. *See Ziparo v. CSX Transportation, Inc.*, 160 F.4th 314, 331 (2d Cir. 2025) ("Unlike other frameworks, however, the ultimate burden does not then shift back to the plaintiff . . . it remains with the employer.").

## II. Mr. Rogers Raised Genuine Disputes of Material Fact Sufficient to Survive Summary Judgment on All Claims.

Even under the *McDonnell Douglas* framework applicable to Mr. Rogers's Section 1981 and FLSA retaliation claims, the District Court erred in granting summary judgment. For Section 1981 and the FLSA, Mr. Rogers must show a "conflict in substantial evidence" on the question of whether Lhoist would not have

taken the adverse action but for his protected activity. *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020); *see also Hagan v. Echostar Satellite, L.L.C.*, 529 F.3d 617, 624 (5th Cir. 2008) (the *McDonnell Douglas* framework also applies to FLSA claims). Although the District Court presented the "but for" standard as a heightened standard, this standard "is not a difficult burden to meet." RE.3; ROA.986; *United States v. Ramos-Delgado*, 763 F.3d 398, 402 (5th Cir. 2014). "This can be a sweeping standard." *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 656 (2020). *Id.* at 656 ("Often, events have multiple but-for causes."). The but-for cause does not even have to be the primary cause. *See id.* at 665.

As for the summary judgment standard, "[a] plaintiff need not establish or prove any elements—by a preponderance or otherwise—to survive summary judgment." *Ames v. Ohio Dep't of Youth Services*, 605 U.S. 303, 322 (2025) (Thomas, J., concurring) (quoting *Hittle v. City of Stockton*, 145 S. Ct. 759, 759 (2025) (opinion dissenting from denial of certiorari)). Proving pretext at the summary judgment stage does not require a preponderance standard (that the employer's stated reason is more likely not true than true), only a genuine dispute as to whether the stated reason was pretextual. *Id.* at 323. Further, "the *McDonnell Douglas* framework fails to capture all

the ways in which a plaintiff can prove a […] claim." *Id.*[2] Regardless, Rogers presents sufficient evidence to survive summary judgment, even under the *McDonnell Douglas* framework.

### A. The District Court Improperly Resolved Disputed Facts and Made Credibility Determinations.

The central factual predicate for Lhoist's termination of Mr. Rogers—that he engaged in a profane, disruptive outburst after receiving his Final Written Warning on October 24, 2023—is squarely disputed.

Mr. Rogers denies it happened. At his deposition, he testified unequivocally: "I did not say that." ROA.632:2-11. He denied walking around the building cursing. ROA.632:2-25. He denied saying "Fuck HR" or calling his reprimand "bullshit." *Id.*

Mr. Gooden, who was on the phone with Mr. Rogers before, during, and after the meeting, testified that Mr. Rogers was professional at all times and did not raise his voice or use profanity. ROA.598, ROA.642:21-644:24. Although Mr. Gooden did testify there was a five-minute period he was not on the phone with Mr. Rogers, he does not recall when specifically that was, which could have been before or after the relevant time and at most goes to credibility of the memory, which can be weighed

[2] Rule 401 of the Federal Rules of Evidence provides that evidence is relevant if "it has any tendency to make a [material] fact more or less probable than it would be without the evidence." Fed. R. Evid. 401. Each relevant fact increases the probability of liability. Returning to Fed. R. Evid. 401 for minimum evidence would be a useful method of analyzing a claim under Fed. R. Civ. P. 56.

by a factfinder. ROA.643:17-18. Mr. Waites, who was in the hallway during the alleged disruption and spoke with Mr. Rogers at this time, likewise testified that he did not hear Mr. Rogers use any profanity. ROA.683:22-684:5.

Despite this directly contradictory testimony from three witnesses, the District Court credited Lhoist's version of events, reasoning that "it is 'not the ultimate accuracy of [Lhoist's] reason that matters, but only whether it believed—in good faith—that [Rogers] violated company policy.'" RE.3; ROA.989 (quoting *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 589 (5th Cir. 2020)).

The "good faith belief" doctrine does not apply where the employer's stated reason is factually false. This Court has expressly held that no "honest belief defense" exists. *Owens v. Circassia Pharms., Inc.*, 33 F.4th 814, 826 n.8 (5th Cir. 2022). The Court explained that "[h]onest belief is the same thing as absence of pretext because giving a false reason for an action to obscure the real reason—i.e., dishonesty—is the very definition of pretext." *Id.* If the alleged outburst did not happen, as multiple witnesses testify it did not, then Lhoist's stated reason is not merely inaccurate; it is fabricated. The falsity of an employer's proffered explanation is itself evidence of pretext. *See Gee v. Principi*, 289 F.3d 342, 348 (5th Cir. 2002) ("[A] factfinder may infer the ultimate fact of retaliation from the falsity of the [employer's] explanation."); *Reeves*, 530 U.S. at 147 ("[I]t is permissible for the trier

of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation.").

Further, the "good faith belief" rationale shields employers only where the plaintiff "did not present evidence of why the company's reliance on other employee's statements was in bad faith." *Jackson v. Cal-W. Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010). Here, Mr. Rogers has presented such evidence in abundance. All accusers were members of management, and Mr. Rogers had previously lodged complaints against or to all but one of them. ROA.498-502, ROA.847-48. None reported any disruptive behavior until *after* Mr. Rogers escalated his complaints to Global Headquarters, and two of the supervisors actually wrote contemporaneous reports hours before Mr. Rogers's protected activity that made no mention of any profanity or disruption. RE.6-7; ROA.833, 835. Lhoist failed to ask Mr. Gooden about the alleged incident, who it knew was on the phone with Mr. Rogers at the time. ROA.598. These facts permit a rational inference of bad faith.[3]

The District Court made a credibility determination that should have been reserved for a factfinder. The testimony of Mr. Rogers, Mr. Gooden, and Mr. Waites

---

[3] Additionally, a good faith requirement is an atextual reading of the applicable statutes. The Supreme Court has recently been rejecting such interpretations. *See, e.g., Muldrow v. City of St. Louis, Missouri,* 601 U.S. 346, 350 (2024) (rejecting a significance test for Title VII); *Ames v. Ohio Dep't of Youth Services*, 605 U.S. 303, 305–06 (2025) (rejecting "background circumstances" requirement for discrimination against a member of a majority group for Title VII Claims).

directly contradicts the testimony of Lhoist's managers. At summary judgment, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson*, 477 U.S. at 255. The nonmovant's evidence "is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* The court was required to credit Mr. Rogers's version of events—that the outburst did not occur—and draw the inference that Lhoist's managers fabricated the basis for his termination.

**B. Lhoist's Failure to Follow Its Own Progressive Discipline Policy Is Evidence of Pretext.**

This Court has held repeatedly that an employer's failure to follow its own internal disciplinary procedures is evidence of pretext, even when those procedures are non-mandatory. *Goudeau v. Nat'l Oilwell Varco, L.P.*, 793 F.3d 470, 477 (5th Cir. 2015) (quoting *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 354 (5th Cir. 2005)). "[A]n employer's lax application of its own internal disciplinary procedures may serve as evidence of pretext." *Id.*; *see also Laxton v. Gap Inc.*, 333 F.3d 572, 581 (5th Cir. 2003) (holding that evidence was sufficient to create a jury issue on pretext when plaintiff's "supervisors never gave [the plaintiff] the chance to explain her conduct or improve it" prior to termination).

Here, the departure from Lhoist's policy is stark. Lhoist's Employee Handbook describes a progressive corrective action process that proceeds through:

(1) verbal reminder, (2) written/formal reminder, (3) decision-making leave/suspension, and only then (4) a Final Written Warning or Performance Improvement Plan. RE.9; ROA.859. Mr. Rogers had never received any corrective action, yet Lhoist jumped straight to the greatest corrective action on October 24, 2023. ROA.251:201:3-7. Every intermediate step was skipped. ROA.593.

The District Court dismissed this evidence because the Handbook includes a reservation that the company "reserves the right to combine or skip steps in this process depending on the facts of each situation and the nature of the offense." ROA.990. But this Court's precedent forecloses this reasoning. In *Machinchick*, this Court held that "even the non-mandatory nature" of a policy does "not eliminate the inference of pretext raised by [the] failure to follow" it. 398 F.3d at 354 n.29. And in *Goudeau*, this Court reversed summary judgment in part because the employer's written warnings were suspicious, even though the employer could have fired the at-will employee without any warnings at all. 793 F.3d at 477. To interpret the law in any other way would give employers carte blanche to retaliate against any employee as they wish, so long as they amend their policies to be "non-mandatory."

A factfinder could conclude that Lhoist skipped its progressive discipline process to set up Mr. Rogers for termination as the Final Written Warning came after

Mr. Rogers's extensive protected activity, was issued despite positive performance reviews and no prior discipline, and was followed by termination within six days.

### C. The District Court Erred in Dismissing Mr. Rogers's Disparate Treatment Evidence.

The District Court dismissed Mr. Rogers's disparate treatment argument on the grounds that the employee to whom Mr. Rogers compared himself "worked for a different manager at a different location" and that Lhoist "consistently issues Final Written Warnings to employees who curse at each other." RE.3; ROA.990.

This analysis was flawed in multiple respects. While the comparator from the sealed document did work at a different location, this does not mean that it may not be considered as evidence at the pretext stage. *See Watkins v. Tregre*, 997 F.3d 275, 285-86 & n.7 (5th Cir. 2021) (holding that evidence need not be "dispositive of pretext to be probative" of pretext). Even imperfect comparators can serve as probative evidence of pretext. *See Brown*, 969 F.3d at 580 ("[D]isparate treatment of less similarly situated comparators [may be] some evidence of pretext.").

Moreover, the factual basis for the discipline was different between Mr. Rogers and the employees the court found were treated similarly. Mr. Simms, who received the same Final Written Warning as Mr. Rogers, instigated the October 6 confrontation, which Lhoist admitted. ROA.666:5-13. Mr. Simms was retaliating against Mr. Rogers for reporting safety concerns. ROA.624:3-626:22. Mr. Simms had

previously been accused of threatening another employee with a hammer. ROA.636:4-24. Mr. Rogers, by contrast, merely responded to Mr. Simms's provocation without any physically threatening language, as Lhoist acknowledged, and with no prior allegations of aggressive behavior. ROA.664:8-21. Giving Mr. Rogers the same punishment as the instigator with a history of violent behavior is evidence a factfinder could credit as evidence of pretext.

Similarly, Terrence Williams, another disciplined employee the District Court relied on as a comparator, received a Final Written Warning that same month for telling another employee he would "whoop his ass"—a physically threatening statement. ROA.850. Mr. Rogers did not use any physically threatening language, as Lhoist acknowledged. ROA.664:8-10. Treating Mr. Rogers the same as employees who made threats of violence and instigated is further evidence of disparate treatment, when those employees did not engage in protected activity. Mr. Simms and Mr. Williams were not disciplined under "nearly identical" circumstances as Mr. Rogers, as the District Court demanded for disparate treatment. RE.3; ROA.990 (citing *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009)).

### D. The District Court Erred in Dismissing Mr. Rogers's Cat's Paw Theory.

Under the cat's paw theory of liability, a plaintiff can establish but-for causation "even if the decisionmaker directly responsible for the adverse

employment action did not act out of retaliatory animus." *Brown*, 969 F.3d at 577. A plaintiff proceeding under this theory must prove that "(1) her supervisor, motivated by retaliatory animus, took action intended to cause an adverse employment action; and (2) that action was the but-for cause of her adverse employment action." *Zamora v. City of Houston*, 798 F.3d 326, 333 (5th Cir. 2015). This Court has held that cat's paw analysis remains viable in the but-for causation context applicable to Title VII retaliation claims and, by extension, Section 1981 and FLSA retaliation claims. *Id.* at 331–33; *see also Harmon v. Collier*, 158 F.4th 595, 617 (5th Cir. 2025) (holding cat's paw applies to Rehabilitation Act retaliation claims requiring but-for causation).

The District Court dismissed Mr. Rogers's cat's paw argument on the grounds that Mr. Rogers "did not name Hamm in the list of 11 individuals he believed to be retaliating against him." RE.3; ROA.992. This finding is factually incorrect and, even if it were accurate, would not foreclose cat's paw liability as a matter of law.

The record demonstrates that Mr. Rogers *did* name Mr. Hamm as a retaliator. Mr. Hamm was the *first* person Mr. Rogers named as a retaliator in his deposition. RE.5; ROA.256:224:22-25. The fact that Mr. Rogers did not repeat Mr. Hamm's name at one particular point later in his deposition (ROA.259:236:15-260:237:4, ROA.992) does not erase the earlier identification. Moreover, even if Mr. Rogers had not named Mr. Hamm elsewhere, the District Court's conclusion that this *bars* him

from accusing Mr. Hamm of retaliation constitutes an improper credibility determination. *See Burton*, 798 F.3d at 236 (A court improperly weighs the evidence "[b]y choosing which testimony to credit and which to discard."). Whether Mr. Rogers's failure to name Mr. Hamm at a particular juncture undermines his allegations is a question of credibility for the factfinder, not the court at summary judgment.

The evidence supporting cat's paw liability is substantial. As to retaliatory animus and intent, Mr. Hamm was Mr. Rogers's direct supervisor and Mr. Rogers lodged multiple safety complaints against him, including a complaint about Mr. Hamm's own instruction to drive a trailer with a blown tire—conduct that Lhoist itself acknowledged was unsafe—days prior to the issuance of the Final Written Warning. ROA.650:6–652:17. Mr. Hamm was also the only person who could have disclosed to Mr. Simms that Mr. Rogers had reported the lug-nut violation, given that Mr. Rogers reported this concern to Mr. Hamm alone and in private. ROA.619:22–620:12. That disclosure led directly to the October 6 confrontation that formed the basis for the Final Written Warning—the first step in the disciplinary sequence that ended with Mr. Rogers's termination.

A jury could rationally infer that Mr. Hamm, knowing of Mr. Rogers's protected activity and having been its target, deliberately allowed Mr. Simms to learn

of the complaint in order to provoke the confrontation that Lhoist then used to discipline Mr. Rogers. Mr. Hamm presented the Final Written Warning to Mr. Rogers, skipping every prior step in the progressive discipline process that Mr. Rogers had never previously been subjected to, and Mr. Hamm was also one of the principal witnesses who reported Mr. Rogers's alleged post-meeting outburst—yet his own contemporaneous email, written within hours of the meeting, made no mention of any profanity or disruptive behavior. RE.7; ROA.498, ROA.835. If the conduct Mr. Hamm later reported as the reason for termination had actually occurred and was egregious enough to warrant firing, it strains credulity that he would have omitted it from an email to his own supervisor sent the same morning. *See Patterson v. Georgia Pac., LLC,* 38 F.4th 1336, 1353 (11th Cir. 2022) (drawing an inference that when a supervisor "did not mention anything at all to [the plaintiff] about her being late," it was "implausible that he was so upset about it that it was the reason he fired her."). A reasonable jury could find that Mr. Hamm's later report was fabricated or embellished with the intent of ensuring Mr. Rogers's termination.

As to but-for causation, Mr. Hamm's instigation of the confrontation that led to discipline by disclosing private information to Mr. Simms, his issuance of a Final Written Warning, and his report that Mr. Rogers used profanity were all necessary steps in the lead up to Lhoist terminating Mr. Rogers. *See Zamora*, 798 F.3d at 334–

35 (finding but-for causation where the decisionmaker "heavily relied on [supervisors'] retaliatory statements" and "would not have been punished absent [their] statements"). The but-for causal chain runs directly from Mr. Hamm's retaliatory animus through his false or embellished report to Mr. Rogers's discharge. The District Court's summary dismissal of this theory, resting on a misreading of a single deposition exchange, was error.

A reasonable jury could find that Mr. Hamm, motivated by retaliatory animus, fabricated or embellished the accusations of an outburst with the intent of causing Mr. Rogers's termination, and that those accusations were the but-for cause of Lhoist's decision to fire Mr. Rogers. Mr. Hamm acting as the retaliator also explains why Lhoist did not retaliate against Mr. Rogers, despite his earlier protected activity, until after Lhoist assigned Mr. Hamm to be his supervisor. Relying on the context of previous lack of retaliation until Mr. Hamm is not proper for summary judgment. *See Ames v. Ohio Dep't of Youth Services*, 605 U.S. 303, 305–06 (2025) (an additional requirement of considering "background circumstances" requirement is not consistent with the text of Title VII in considering discrimination against a member of a majority group). Section 1981 is construed similarly to Title VII. *See Pisharodi v. Valley Baptist Med. Ctr.*, 393 F. Supp. 2d 561, 575 (S.D. Tex. 2005). The language of

the Civil Rights Act of 1866 uses the plenary phrases "full and equal benefit of all law" and "as enjoyed." 42 U.S.C. § 1981(a).

### E. The Suspicious Nature of Lhoist's Investigation Supports an Inference of Pretext.

An employer's investigatory choices can, "depending on the facts of a particular case, be suspicious in a way that renders the 'defendant's explanation ... unworthy of credence' and permits an inference of discrimination." *Owens*, 33 F.4th at 829 (quoting *Reeves*, 530 U.S. at 147).

The circumstances of Lhoist's investigation are deeply suspicious. Lhoist did not suspend Mr. Rogers until *after* he escalated his protected activity by emailing Global Headquarters. Lhoist then did not investigate Mr. Rogers's alleged outburst until *after* it had already suspended him; the first written report of the misconduct was generated twenty minutes after the suspension. ROA.840, 886. Lhoist did not preserve audio or video recordings that could have verified its claims, despite Mr. Rogers's request that it do so and despite preserving the video of Mr. Rogers's confrontation with Mr. Simms. ROA.594, ROA.839. And Lhoist did not obtain testimony from Mr. Gooden, a critical witness whom Lhoist knew was on the phone with Mr. Rogers throughout the events of October 24. ROA.594.

The District Court downplayed the investigation's deficiencies by relying on *Owens*, in which this Court stated that the "mere fact that [the employer] did not

conduct these investigations as [the employee] might have preferred is not sufficient to show that the investigations were inadequate." 33 F.4th at 829. But *Owens* is distinguishable. In *Owens*, the plaintiff failed to identify specific evidence suggesting that the investigation was anything other than a reasonable, if imperfect, inquiry. *Id.* at 829-30. The facts of this case are more similar to *Trujillo v. PacifiCorp*, a Tenth Circuit case the Court analyzed in *Owens*. 524 F.3d 1149; *Owens*, 33 F.4th at 830. The Fifth Circuit held that case was distinct from the facts of *Owens* because the employer failed to interview a supervisor who later "submitted an affidavit that undercut the employer's justification for the terminations." *Owens*, 33 F.4th at 830. The Court explained that "[i]f the employer had interviewed the supervisor, therefore, it may have found that its basis for the terminations was mistaken" so the "failure to interview was consequently suspicious and 'a significant circumstance contributing to the inference of discrimination.'" *Id.* (quoting and analyzing *Trujillo*, 524 F.3d at 1159). Similarly, in this case, if Lhoist had interviewed Mr. Gooden or Mr. Waites, it may have found that it was mistaken in its belief that Mr. Rogers acted inappropriately following his disciplinary meeting. This failure to interview is "consequently suspicious" and evidence of pretext. *Id.*

The sequence of events—protected activity first, suspension second, and allegations and investigation third—raises further suspicion and is consistent with an

employer constructing a post-hoc justification for a decision already reached. At the very least, these facts create a credibility issue that a jury, not the court, should resolve.

### F. The Suspicious Timing and Circumstances of Mr. Rogers's Suspension and Termination Support an Inference of Pretext.

As has already been discussed, the temporal proximity between Mr. Rogers's protected activity and his adverse employment actions is striking. On its own, the close temporal proximity of one day between Mr. Rogers's complaint to Lhoist Headquarters and Lhoist's decision to suspend Mr. Rogers "is a strong indicator of pretext." *Jan. v. City of Huntsville*, 74 F.4th 646, 654 (5th Cir. 2023) (discussing temporal proximity of fifteen days). That the allegations of the disruption only came after Lhoist had already decided to suspend Mr. Rogers is further evidence of pretext. *See Burton v. Freescale Semiconductor, Inc.*, 798 F.3d 222, 237 (5th Cir. 2015). Based on this evidence, a jury could conclude that Lhoist "solicited and exaggerated complaints from [Lhoist] managers" to "justify a predetermined decision to terminate" Mr. Rogers. *Laxton v. Gap Inc.*, 333 F.3d 572, 582 (5th Cir. 2003). The absence of any mention of profanity or disruption in the contemporaneous emails from Mr. Thomas and Mr. Hamm further undermines Lhoist's stated reason for suspending and terminating Mr. Rogers. *See Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (noting that temporal proximity coupled with "evidence in the

form of memoranda written by [the employer] that tend to refute [his] own justifications for the demotion . . . supports an inference of retaliation").

While this Court has held that "timing standing alone is not sufficient absent other evidence of pretext," *Burton*, 798 F.3d at 240 the "combination of suspicious timing with other significant evidence of pretext can be sufficient to survive summary judgment." *Garcia v. Prof'l Contract Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019). Here, temporal proximity does not stand alone. It is combined with disputed allegations of misconduct; failure to follow internal policies; disparate treatment; a one-sided and suspicious investigation; inconsistent reporting by management; and management's identification of Mr. Rogers by his protected activity. These factors taken together are more than sufficient evidence that a jury could rely on to find that Lhoist's proffered reasons for disciplining and terminating Mr. Rogers were pretextual.

## CONCLUSION AND PRAYER

For the foregoing reasons, Mr. Rogers respectfully requests that this Court reverse the District Court's grant of summary judgment and remand for further proceedings consistent with the applicable statutory frameworks.

Respectfully submitted,

*/s/ Brian Sanford*
**Brian Sanford**
Texas Bar No. 17630700
bsanford@sanfordfirm.com
**Elizabeth "BB" Sanford**
Texas Bar No. 24100618
esanford@sanfordfirm.com
**Emma Hoffman**
Texas Bar No. 24149862
ehoffman@sanfordfirm.com
**THE SANFORD FIRM**
2711 Hibernia Street
Dallas, TX 75204
Ph: (214) 717-6653
Fax: (214) 919-0113

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing was served on all lead counsel of record in accordance with the Federal Rules of Appellate Procedure on May 8, 2026, via PACER's electronic service.

*/s/ Brian Sanford*

## CERTIFICATE OF COMPLIANCE

In compliance with Federal Rules of Appellate Procedure 28 and 32(g) and Local Rule 5, I hereby certify that this brief contains 7,565 words, excluding the portions of the brief exempted by FED. R. APP. P. 32(f).

*/s/ Brian Sanford*